WILLIAM and SAMUEL NEWELL, complainants below, appellants, *vs.*
EVAN F. MORGAN and others, defendants below, respondents.

If land be purchased by one and the conveyance taken in the name of another, a trust
results to the person paying the purchase money.

And if the title be so taken in *fraud* of creditors, chancery will relieve against the
fraud.

The land subjected in such a case to the payment of debts in the *order of preference*
as established at law.

Diligence at law often gives a preference in equity.

A creditor having *exhausted* his remedies at law, will be aided by a court of equity to
discover and reach property beyond the reach of execution at law.

The oldest judgment creditor having applied for relief to equity, was decreed to have
a *legal preference* to the assistance of that court; a *lien* on the *equitable* interest, or
right acquired in equity by *superior diligence* at law.

In such case, the equitable doctrine of distributing assets among creditors *pari passu,*
does not apply.

The doctrine of pari passu distribution proceeds on the principle, that " equality is the
highest equity "

*In general,* a cestui que trust has the same power over the trust estate as the owner
of a legal estate, (except in respect of dower ;) and the trust estate is in general lia-
ble in the same manner as the legal estate.

APPEAL from the decree of the chancellor from Sussex county.
*Coram*—J. M. CLAYTON, chief justice; BLACK and HARRINGTON, jus-
tices, of the Superior Court.

The bill in this case was filed by the complainants as judgment
creditors of Evan F. Morgan, a merchant in this state, to avoid a
conveyance of real estate in Sussex county, and to obtain payment
of their judgment out of the proceeds of that estate.    The bill in sub-
stance stated that the complainants, who were merchants in Phila-
delphia, sold and delivered to Evan F. Morgan on credit, in 1830
and 1831, goods to the value of $664 39, which sum was reduced by
payments to $483 39 ; that Evan F. Morgan afterwards exchanged
the goods so sold to him, and other goods of said Morgan, with Da-

niel Godwin, for a house and two lots in Lewestown, Sussex county, and procured Godwin to execute a deed for the property, conveying it in fee simple to said Morgan's children, the above named defendants. The deed recited the consideration to be $2,000 *paid by the said Evan F. Morgan,* and was duly acknowledged by Daniel Godwin on the 4th November 1831, and recorded 25th September 1832. The bill further stated that said Morgan, on the 7th March 1832, made and delivered to the complainants a bond, with a warrant of attorney to confess judgment thereon, for the real debt aforesaid of $483 39 with legal interest, with stay of execution on said judgment for twelve months from the date; that on the 8th March 1832, judgment was accordingly entered on the said bond in the Superior Court of this state in and for Sussex county; that a writ of *fieri facias* was afterwards duly issued on said judgment returnable to April term of said court 1833, on which the sheriff returned a sale of goods and the application of all the proceeds to prior executions. The bill then charged that Evan F. Morgan remained in possession of the property conveyed to his children after the execution of the deed and enjoyed it as his own, and that the sale and conveyance was a fraud on his creditors. It prayed that the conveyance might be deemed to have been made with the view of defrauding the complainants and other creditors; that the title *might be considered as having vested in the said Evan F. Morgan from its date,* and that he might be deemed to be a trustee of the property, &c.; and concluded with a general prayer for relief.

The defendants, by their answer, denied the charge of fraud and the right to relief: but after hearing the proofs in the cause, the chancellor decided that the conveyance from Godwin to the defendants below was fraudulent and void, " so far as the same affects the complainants, creditors as aforesaid;" and he decreed that unless the defendants paid to complainants the sum of $570 96 in three months, the property so conveyed by Godwin to the defendants should be sold, and the proceeds brought into court.

In pursuance of this decree the lands and premises aforesaid were duly sold by the sheriff to George Hickman, on the 18th July, 1835, for $1130; and the sale was afterwards confirmed by the chancellor on the 22d September, 1835.

After the complainants had thus completely succeeded in overthrowing the fraudulent conveyance, without assistance from the other creditors; on the 23d September 1835, the petition of H. Freeland, S. M. Harris, Nathaniel Knowles, Edwin M'Calla, G. W. Lambert, A. Pollard, Jr., assigees of Edward Schroeder, Michael V. Baker and E. L. Moss, *other creditors of Evan F. Morgan,* was filed, and

they were admitted parties to come in under the decree.    An account was then taken of the creditors of E. F. Morgan after notice given, and their debts and priorities as existing at law were ascertained. From this it appeared that the complainants were the *oldest judgment creditors* of Evan F. Morgan.

On the 18th of March, 1836, the cause was heard on the question of distribution of the money arising from the sale of the property in controversy among the creditors ; and the chancellor decreed, that the costs of the suit (amounting to $152 19) being first deducted from the amount of sales, the residue being $977 80, " be divided and distributed to and among the creditors *pari passu,* so that a *pro rata* distribution of the fund be made among the several creditors ;" and he proceeded to distribute it accordingly.

From this decree the complainants, William Newell and Samuel Newell, took their appeal to this court.    In their causes of appeal the first and principal alledged error in the decree was, " that so much of the said fund arising from the sale of the property mentioned in the pleadings as was sufficient to pay and satisfy the claim of the said William and Samuel Newell, ought to have been applied to the same, they being the oldest judgment creditors of the said Evan F. Morgan, so that the said fund should have been distributed and applied to and among the creditors according to the grade of their several and respective judgments, instead of a *pro rata* distribution."

For the plaintiffs in error it was argued : that the superior diligence of Newell & Newell in detecting the fraud, and avoiding the conveyance, entitled them to the same preference in equity as their judgment at law would have given them, if the title to the land had been, as it ought to have been, in Evan Morgan instead of his children.    A creditor who prosecutes his remedy at law as far as he can, is entitled in equity to the benefit of his legal diligence, as giving him a preference.    That though the complainants' judgment gave them no lien at law, they had used such diligence as would have given them a lien, but for the fraud, and had then gone into chancery, established the fraud, and set aside the conveyance : that the principle of pari passu distribution would enable the other creditors to profit by Morgan's fraud, and let them in to share the proceeds of land which, but for that fraud, would have been first liable to complainants' judgment.    That Evan Morgan having paid the purchase money, a *trust* resulted to him, notwithstanding the title was conveyed to his children ; a trust which a court of equity ought to execute by directing the conveyance of the legal title, so that creditors at law would be entitled according to their legal priority ; the foremost creditor at law being *preferred* in equity as to the trust estate, though

he have no lien at law. (4 *Johns. Ch. Rep.* 687, *M'Dermott* vs. *Strong; Idem*, 629, 43, 90.)　That though equitable funds are generally distributed pari passu among creditors, it is not so where there is any question of legal preference.　That there was error also in ordering the costs to be paid out of the fund in court.　Admitting the principle, that, in a bill to procure a conveyance, necessary parties are protected from the payment of costs, the defendants here, by *resisting* the bill, made themselves parties to the fraud, and were not entitled to costs.

For the respondents it was urged: that the ground of preference in equity was priority of *lien* at law, which the complainants had not: that the only superior diligence of complainants at law was in procuring a judgment of Morgan by confession pending the suits of the other creditors, which judgment was no lien on the property, and was moreover fraudulent and void, being given in contemplation of insolvency: (*Dig.* 140,) that only a small portion of the goods, for which the land was taken in exchange, had been furnished by Newells, and there was no equity in allowing them to pursue the land in payment for their goods, to the exclusion of other creditors: that the chancellor decreed the conveyance fraudulent, not because it evaded the lien of complainants' judgment, but because it was an attempt of Morgan to shield his property against all his creditors; and that as to the costs, the respondents were no party to the fraud; and the decree by paying the costs out of the fund in court, and dividing the balance pari passu, abated a just proportion from each creditor according to his interest.

It was replied in behalf of the plaintiffs in error, as to the objection that their judgment was void under the act against fraudulent insolvency, that that act only applied to assignments made in contemplation of insolvency, or on taking the benefit of the insolvent laws, and giving a *preference* to creditors in such assignment: that a man might lawfully pay a debt, or give a bond, or confess a judgment though in failing circumstances, and the preference thereby given would not avoid the bond.

The *Chancellor* explained his decree.

Johns, Jr., *Chancellor.*—My first impressions were in favor of the preference.　When I came to look into the cases I had no doubt, that wherever a *legal* right was established it would be recognized in *equity;* wherever a party had established a judicial preference at law by judgment or execution, a court of chancery would recognize such preference and establish the right.　But the term judicial preference is not used in reference to the speed of the parties in pressing their claims at law, but in reference to *legal liens.*

I also recognized the general doctrine of equity in distributing equitable assets *pari passu.*

Also the doctrine that in the distribution of *intestate* assets the court will follow the law of distribution.

A bill was filed by complainants for themselves and other creditors. I found a fund to be distributed by the court without reference to any assignment (which occurs in many of the cases cited) or claims upon the fund, otherwise than as through the court of chancery. I considered the equities of all the creditors *equal,* because none of them had ever obtained a *legal priority ;* I, therefore, adopted the principle of pari passu distribution.

As to the form of the decree, the defendants were infants brought into court, and had no agency in the defence. They were but nominal parties. I thought it best to make the decree in the alternative; to pay, or that the land be sold; and when sold, the question of distribution came up; and, though not without doubts on the subject, I thought as there was no legal priority, the principle of pari passu distribution was such as should be applied to the case. The matter of costs was not moved before me.

*J. M. Clayton,* chief justice of the Superior Court, delivered the opinion of this court.

CLAYTON, *Chief Justice.*—In this case the chancellor very properly decided, that the land conveyed by Godwin to the children of Evan F. Morgan was fraudulent as against creditors, and subject to the payment of the debts of Morgan, who indeed, as appears from the face of the deed itself, paid the whole consideration money for the property which was thus conveyed to his children. It is in principle like the case of *Demaree et al.* vs. *Driskell,* which was lately decided by the Supreme Court of the State of Indiana, and is reported in 3d *Blackford's Rep.* 115. It was there held that where A, being indebted to B, and having purchased a tract of land with the fraudulent intent of securing it against B's claim, took the conveyance in the name of C, the infant son of A. B, who had obtained a judgment against A for the debt after the transaction, might, by a suit in chancery, subject the land to the payment of the judgment. The court there say, that " the land was purchased by Peter Demaree, senr., with his own money, and the title was taken by him in the name of his infant son, with the fraudulent intention to secure the property from the debt due to Driskell. The beneficial interest in the premises is in Peter Demaree, senr., and must be in equity subject to the judgment of the complainant."

Soon after the statute of frauds passed, it was determined, that if an estate be purchased with the money of A, and the estate is

conveyed to B, B will be a trustee for A, and it is such a resulting trust by implication of law, as is saved by the statute, and needs no declaration. (*Lade* vs. *Lade*, 1 *Sergt. Wils. Rep.* 21.) "It is," says *Lord Hardwicke*, "a certain known rule, that when a man purchases land in the name of another, it is a resulting trust," (2 *Ventris*, 290, *Gascoigne* vs. *Thuring*, 1 *Vern.* 366; *Finch* vs. *Finch*, 15 *Vesey*, 50, *S. C.; Ryall* vs. *Ryall*, 1 *Atk.* 59; *Ambl.* 413; *Smith* vs. *Baker*, 1 *Atk.* 385; 2 *Id.* 75.)

The substance of the cases on this subject appears to be, that the trust of a legal estate, whether freehold, copyhold, or leasehold; whether taken in the names of the purchasers and others jointly, (see 10 *Vez.* 367; 1 *Peere Wms.* 780,) or in the name of others without that of the purchaser; whether in one name or several; whether jointly or successively, results to the man who advances the purchase money; and this in analogy to the rule of the common law, that where a feoffment is made without consideration, the use results to the feoffor. (2 *Cox.* 92; 2 *Mad. Chy.* 113.)

We know of no distinction which a court of equity can take in such a case as the present, to exempt the trust fund from that priority which time confers, so as to let in equitable securities of a later date *pari passu* with those which are older. A trust resulting by operation of law, where an estate is purchased in the name of one, but the money or consideration is given by another, and where, too, the object of the whole transaction is to defraud creditors, must stand upon at least as favorable grounds for the benefit of a diligent creditor, as ordinary trusts, when the court has once settled its character. The general principle in equity is, that a *cestui que trust* has, in most respects, the same power over the trust estate, as owners of legal estates are possessed of; and the trust estate is in general liable in the same manner as a legal estate, except in respect of dower. (1 *Mad. Chy.* 453.) The *cestui que trust* may alien it, and any legal conveyance or assurance by him has the same effect and operation upon the trust as it would have had at law upon the legal estate. (2 *Chy. Ca.* 63, 78; 1 *Bro. C. C.* 72; 3 *P. Wms.*, 196.) The effect of a *fine* is the same as at law with regard to an equitable interest, if of such a nature that, turned into a legal interest, it would have been barred. (1 *Atk.* 476; 1 *Vern.* 440.)

A *common recovery* suffered by a *cestui que trust* in tail, in possession, bars all equitable remainders depending upon such estate tail, (1 *Chy. Ca.* 49; 2 *Id.* 64, &c.; 2 *Ventris*, 350,) although there was no legal tenant to the præcipe. (1 *Vern.* 13; 2 *Ves.* 276, 277; 2 *Chy. Ca.* 67, 78.) It seems that an equitable recovery is good, although the equitable tenant to the præcipe has also the legal estate. And

according to the old practice of the court, a recovery of an equitable estate was not necessary, but it might be barred by deed. It has been holden, that the tenant in tail of an equitable estate might by bare articles, or by a devise or feoffment, or bargain and sale, bar the entail; but Lord Hardwicke reversed these decisions, and confined the equitable interest within the channel marked out at law for barring the legal estate; so that a tenant in tail of a trust estate with remainders over, cannot by will or settlement bar the remainders without a recovery, any more than tenant in tail of a legal estate. (*Ambl.* 518; 1 *Ves.* 260; 2 *Vern.* 552; 1 *P. Wms.* 91; 3 *Ves.* 277; 5 *Ib.* 13.) Indeed *equity follows the law so closely*, that a *cestui que trust* may devise the trust estate, (2 *Vern.* 680,) and by his treason or felony he forfeits it. In England it is subject to an extent, unless it be a trust of a term of years; and it may be taken in *execution.* In the case before us, the trust results to the father, not merely by his advancement of the consideration money, *but by his own fraud*, and equity holds him to be vested with the beneficial interest for the benefit of the very creditors whom it was his object to defraud. The case presents one of the most beautiful illustrations of the beneficial and remedial powers of that court.

Following out the general principle of all the cases we have referred to by analogy to the rules of law, we hold the general doctrine, that these securities on equitable estates by judgment, shall take their rank according to the priority of their respective dates. The chancellor has correctly established the existence of express fraud in the case. Equity considers that as done which ought to be done in a case of clear fraud, and here we view the whole transaction as if Evan F. Morgan had been the grantee from Godwin. It would have been an irreversible decree if the chancellor, during the life of Morgan, Godwin being made a party, had decreed a legal conveyance from Godwin to Morgan, to take effect as of the date of the conveyance to the defendants. In such a case, the parties would have stood upon their priorities as established by the entry of their respective judgments, and the complainants being the oldest judgment creditors would have been unquestionably entitled to their whole claim out of the fund. In *McDermott, et al.* vs. *Strong, et al.*, 4 *Johns. Chancery Reports*, 687, it was decided that this court has power to assist a judgment creditor to discover and reach the property of a debtor, which is beyond the reach of an execution at law; that to get possession of the equitable interest of a debtor as a resulting trust in goods and chattels, the judgment creditor must come into this court. But that before a judgment creditor can be entitled to the aid of the court against the goods and chattels of his debtor, or against any

equitable interest of such debtor in them, he must first have taken out execution at law, and caused it to be levied or returned so as thereby to show a failure of his remedy at law ; that a judgment creditor who so takes out execution at law, but is unable to reach a residuary trust interest in the chattels of his debtor, and files his bill for the aid of this court, gains, by his execution and legal diligence, *a legal preference to the assistance of this court,* or a lien on the equitable interest, which cannot be affected or impaired by any subsequent assignment of that equity by the debtor, either for the benefit of all his creditors generally, as under the insolvent act, or for the benefit of a particular creditor ; and that although it is the favorite policy of this court, to distribute the assets among all creditors, pari passu ; yet when such a *judicial preference* has been established by the superior legal diligence of any creditor, that preference will be observed in the distribution of the assets.   In the case now before us, the complainants have a priority both of judgment and execution, and have exhausted all the remedies at law.   Their " judicial preference" or " right acquired by legal diligence to the assistance of this court," in other words, their " lien on the equitable interest," has been acquired by their priority of judgment against real estate, as in the case just cited, the lien acquired was by an execution at law, that being the case of a ship.   In *Brinkerhoff* vs. *Brown,* 4 *Johns. Chancery Rep.,* 677, the chancellor says, " I find the rule to have been long and uniformly established that ' to procure relief in equity by a bill brought to assist the execution of a judgment at law, the creditor must show that he has proceeded at law to the extent necessary to give him a complete title.   *If he seeks aid as to real estate, he must show a judgment creating a lien upon such estate ;* if he seeks aid in respect to personal estate, he must show an execution giving him a legal preference or lien upon the chattels."   In *M'Dermott* vs. *Strong,* above cited, the chancellor says, " It may be laid down as a rule of equity, that an execution creditor at law has a right to come here and redeem an incumbrance upon a chattel interest, in like manner as a judgment creditor at law, is entitled to redeem an incumbrance upon the real estate ; and the party so redeeming will be entitled, in either case, to a preference, according to his legal priority."   In the case last cited, it will be seen that the notion of *judicial preference* is founded entirely on the superior diligence at law of the creditor entitled to it.   When it is termed a " lien on the equitable interest" it is not meant that any such lien exists *at law.*   It is merely a right acquired *in equity* by diligence at law.   In the case before us, the diligence of the complainants in obtaining judgment, as well as execution in a court of law, and prosecuting their claim to the utmost

limits in that court, was superior to that of any other creditor; and the same is true of their proceedings in equity. They filed their bill to obtain relief against the fraud of the debtor, established the fraud in equity, and, at their own expense and trouble, obtained a decree for relief without any the slightest aid from the other creditors. Had they failed they alone would have been liable for costs. The other creditors laid by until their victory was complete; and, being determined to incur no risk, they refused to become parties not only until the decree was made in the complainant's favor, but until the sale was effected; the amount of the trust fund ascertained to be amply sufficient to pay the complainants' claim; and then, after the final confirmation of the sale, they became parties to the suit, and arrested the complainants at the very moment when they expected to realise the fruits of their superior diligence both in law and equity, with a claim of right to a rateable proportion of the whole fund. The doctrine of distribution pari passu among creditors in equity proceeds solely on the principle, that "equality is the highest equity," (3 *P. Wms.* 442,) and this is strictly true in every case to which the doctrine has ever been applied. But in this case equality is not equity. It is little better than plunder to the amount to be lost by the complainants by such a mode of distribution. In a conscientious regard, the simple contract creditor and the bond creditor in England, are held to be equal; and it is justly said, that "a debt without specialty is as much a debt *jure naturali* and *in conscience,* as a debt by specialty." (1 *Ch. Ca.* 248.) But we cannot see here that in conscience there can be any sound reason for the omission to extend the principle, that equitable securities shall claim according to their dates, to this case. That was the principle upon which *Lord Thurlow* decided the case of *Beckett* vs. *Cordley et al.,* (1 *Brown's Chy. Cases,* 353.) There John Iveson, being about to mortgage an estate upon which his younger brothers and sisters had charges, got them to join in the conveyance, and acknowledge the receipt of their portions, giving them an undertaking that he would grant them a subsequent mortgage, and enter into no prior security. He afterwards made a subsequent mortgage to the plaintiff for money lent before on bond, and a fresh sum advanced. It was held, that the claims of the younger children had priority in equity, and should be preferred to the plaintiff's mortgage. In the decision of this cause, the Lord Chancellor went expressly upon the ground, that the equitable security which was *prior in time must be prior in equity;* and in the argument of it by very able counsel, this principle was admitted on both sides, though it was contended for the plaintiff that the younger security being in part for an older debt, which had been secured by

bond, the security of the defendaats was thereby postponed to it. So too, in the case of a mortgage, a court of equity respects the general lien of a creditor by judgment against the deceased in his lifetime subsequent to the mortgage; the court giving to such judgment a priority over other debts. (*Morgan* vs. *Lord Sherrard*, 1 *Vern.* 293; *Sharpe* vs. *Earl of Scarborough*, 4 *Ves.* 538; see also *Foly's case*, 2 *Freem*, 49.) And when a testator dies indebted by judgment, and land mortgaged by him descends to his heir at law, and a great part, or the whole, of the mortgage debt is by the executor paid out of the personal estate, and the simple contract creditors of the testator apply to a court of equity to be paid, out of the land descended, so much as the mortgagee has received from the personalty, it appears that Lord Chancellor Parker expressed an opinion that, out of the land, the court would in the first place, pay the creditor by judgment. (*Wilson* vs. *Fielding*, 10 *Mod.* 428. See the decree in this case from the *Reg. B.* 2 *Vern.* 3d *edition*, 764, *n.*) Equitable assets are, it is true, by a court of chancery distributed *pari passu.* The most usual case in which the court has held assets to be equitable and not legal, has been that, where by some devise, grant, settlement or agreement, it is an object of the trust *to pay debts generally;* and in such cases it is decided, as we before observed, " that a debt without specialty is as much A DEBT *jure naturali*, and in conscience, as a debt by specialty." Indeed, in cases of this description, by the very terms which create the trust, all creditors are considered as placed on the same footing without reference to their legal rights. There are other cases, some of which rest on the most refined distinctions, and which will be found to be well collected by a late elementary writer. See *Ram on Assets*, p. 317, 324. The cases of *Child* vs. *Stevens*, 1 *Vern.* 101; *Symmes* vs. *Symonds*, 4 *Bro. P. C.* 328; *Earl of Bristol* vs. *Hungerford*, 2 *Vern.* 524; *Bothomly* vs. *Lord Fairfax*, 1 *P. Wms.* 334, and 2 *Vern.* 750; *Sharpe* vs. *Earl of Scarborough*, 4 *Ves.* 538, and 3 *Salk*, 83, are referred to as cases in which the judgment creditors have been preferred out of equitable estates by reason of their legal priority. After the most careful research, we have not been able to find a solitary case in which a trust estate resulting by the party's own fraud, has been adjudged to be equitable assets; and in a case like the present, we could not consent to extend the doctrine of equitable assets an inch beyond the adjudged cases, for the purpose of depriving the complainants of the benefit of their superior diligence.

It must be observed too, that this is not the case of an application to chancery for an administration of assets. This judgment was recovered and this bill was filed in the life time of Evan F. Morgan,

the debtor, and the prayer of the bill is, that *the title to this land may be considered as vested in Morgan, from the date of the deed of Godwin.* The fraud being established, that prayer must be granted; and this court must view the case as one where the equitable title was, and the legal title ought to have been, in Morgan the debtor, from that date. The relief which we must give is that, which ought to have been granted if the decree had been made in Morgan's lifetime. The subsequent death of Morgan *pendente lite,* without any administration on his estate, does not alter the equity of the case. The bill does not pray for an administration or distribution of assets, legal or equitable; but it does pray that what ought to have been done shall be considered as done, and that the estate shall be considered as vested in Morgan, at the date of Godwin's deed. The other creditors are on their own motion *" admitted parties to come in under the decree in this cause."* This application was made long after the sale of the estate at which the complainants may have attended and bid to save their own claim, without any co-operation from the other creditors; and the circumstances of the case exhibit nothing to warrant us in giving them the benefit of any risk or expense incurred by the complainants, who had every reason to believe that in doing what they did to increase the proceeds of the sale, they were acting for their own advantage. The decree of distribution, therefore, must be reversed, and the record and proceedings remanded to the court below.

*Wootten* and *J. A. Bayard,* for plaintiffs in error.

*Bates,* for defendants in error.